IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

PETER L. DUNN.

                          Plaintiff,                    OPINION AND ORDER

    v.

                                                07-cv-621-bbc

MICHAEL J. ASTRUE,
Commissioner of Social Security,

                          Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

     This is an action for judicial review of an adverse decision of the Commissioner of Social Security brought pursuant to 42 U.S.C. § 405(g).  Plaintiff Peter L. Dunn seeks reversal of the commissioner's decision that he is not disabled and therefore ineligible for Disability Insurance Benefits and Supplemental Security Income under Title II and Title XVI of the Social Security Act, codified at 42 U.S.C. §§ 416(i), 423(d) and 1382(c)(3)(A). He contends that the administrative law judge did not give adequate consideration to consider his mental impairment and erred in rejecting plaintiff's consulting psychologist's opinion that plaintiff had major depression and plaintiff's treating physician's opinion that he was unable to work because of chronic pain.

1

I find that the administrative law judge had ample support for his conclusions about plaintiff's mental impairment and his decision to reject the opinions of plaintiff's consulting psychologist and treating physician. Accordingly, I will deny plaintiff's motion for summary judgment and affirm the administrative law judge's decision.

The following facts are drawn from the administrative record (AR):

FACTS

A.  Background and Procedural History

Plaintiff was born on December 23, 1961.  AR 57.  He has an eleventh grade education.  AR 499.  His most recent work was as a construction laborer.  AR 94.

Plaintiff applied for Social Security Disability Benefits and Supplemental Security Income on September 21, 2004, alleging disability since May 1, 2004 because of polycystic kidney disease causing abdominal pain, thoracic pain and depression.  AR 86, 106.  After the local disability agency denied his application initially and upon reconsideration, plaintiff requested a hearing, which was held on April 19, 2007 before Administrative Law Judge John H. Pleuss in Madison, Wisconsin.  AR 491.  The administrative law judge heard testimony from plaintiff and his wife, AR 494-521, and testimony from a neutral vocational expert. AR 521-27.  He issued a decision on May 21, 2007, finding plaintiff not disabled.  AR 21-

31.  The decision became the final decision of the commissioner when the Appeals Council denied plaintiff's request for review on August 3, 2007.  AR 10-12.

## B.  Medical Evidence

In the summer of 2003, plaintiff went to the emergency room several times complaining of abdominal pain.  A November 21, 2003 diagnostic imaging test showed that plaintiff had cysts on both kidneys.  AR 229-32.

In February 2004, plaintiff sought treatment for constant mid-thoracic pain after a work injury.  He was diagnosed with a muscle strain and prescribed Oxycodone and physical therapy.  AR 203-09.  In May 2004, plaintiff saw his treating physician, Dr. Richard P. Day, who diagnosed him with continued chronic pain syndrome for the thoracic pain and advised him to resume taking trazodone for sleep, appetite and mood.  Dr. Day noted that plaintiff was not working because he had been laid off.  AR 343.

On October 8, 2004, plaintiff saw Dr. Day for continued abdominal pain.  Dr. Day indicated that it was not likely that the pain was related to the cysts on plaintiff's kidneys.  Dr. Day recommended that plaintiff lift no more than 10 pounds.  AR 334.  Plaintiff was taking Oxycodone and oxycontin for pain.  AR 335.  On October 18, 2004, Dr. Day wrote a letter stating that plaintiff had been unable to work for the previous year because of pain in his abdomen and thoracic spine.  He added that plaintiff's situation had not improved

3

with physical therapy and that diagnostic testing had not provided a specific treatment modality.  Dr. Day limited plaintiff to lifting 10 pounds and anticipated that this restriction would be permanent.  AR 391.

On November 26, 2004, plaintiff saw Dr. Day.  A review of plaintiff's abdominal computed tomography scan showed no progression of the kidney cyst, which led Day to the conclusion that plaintiff did not have polycystic kidney disease. AR 321.  He agreed to write a letter to the child support agency stating that plaintiff was unable to work because of his pain.

In December 2004, plaintiff sought treatment from Dr. Stephen B. Erickson at the Mayo Nephrology Clinic.  At the time, plaintiff was taking oxycontin, oxycodone and clonazepam.  Dr. Erickson wrote in his notes, "I am somewhat suspicious that the patient's renal cysts are not related to his chronic pain problem." AR 212.  Nonetheless, he ordered an ultrasound and laboratory tests.  Dr. Erickson also noted that he thought a psychiatric evaluation of plaintiff would be helpful.  AR 289.

On December 21, 2004, Dr. Chandler Dora, a urologist, performed surgery on plaintiff to remove what appeared on ultrasound to be a solid mass on plaintiff's left kidney.  In fact, the suspected mass was a hemorrhage in one of the small, benign renal cysts.  The cysts were removed.  Dr. Erickson hoped that the procedure would relieve some of plaintiff's pain. AR 213-14.  On December 20, 2004, Dr. Erickson wrote a letter, stating that plaintiff

4

had been unable to work because of chronic abdominal pain for the last two years and that he would continue to be disabled for six more weeks following removal of the lower portion of his left kidney for suspected cancer.  AR 272.

Initially, plaintiff had some pain relief after his cysts were removed, but between January 18, 2005 and February 25, 2005, he sought emergency room treatment five times for abdominal pain.  AR 25, 302-07, 310.  At these visits, plaintiff had normal abdominal examinations and was diagnosed with chronic pain.  He was advised that it was his responsibility not to run out of his prescriptions for narcotic medications early.  On February 24, 2005, an emergency room doctor examined plaintiff and found no objective evidence to support his wife's reports that plaintiff experienced disorientation, confusion, personality changes and difficulty walking.  AR 302.

On March 21, 2005, plaintiff reported to Dr. Day that he experienced increased pain after having attempted to work earlier in the month.  Day did not examine plaintiff but wrote, "I would be happy to write a letter indicating he cannot return to his former work. I am not sure I can say that he is unable to work."  AR 301.  He wrote the letter that same day, stating, "It is unclear whether he will be able to work at all because of the pain and the medicines necessary to take in order to control it."  AR 390.

On April 20, 2005, plaintiff told Dr. Day that he had had difficulty for several days after doing some raking in his front yard and working on a garage sale.  After examining

5

plaintiff, Day found no palpable tenderness or masses in plaintiff's left upper quadrant.  AR 300.  On May 20, 2005, he indicated that plaintiff was doing satisfactorily with his pain control, using no more than 16 oxycodone a day.  His examination of plaintiff showed "mild left upper quadrant tenderness without rebound or guarding."  AR 297.

On July 12, 2005, Dr. Day wrote in a letter that plaintiff was unable to work full time because of his chronic pain and that this was likely to be a permanent restriction.  AR 389.  He wrote similar letters on November 14, 2005, June 2, 2006 and February 15, 2007.  AR 428, 458-59.

On October 15, 2005, plaintiff went to the emergency room at Divine Savior Hospital in Portage, Wisconsin, where he reported that he was experiencing abdominal pain and had not taken his narcotic medications.  The treating physician diagnosed plaintiff with chronic pain and narcotic withdrawal.  AR 419-20.

## C.  Consulting Physicians

On January 19, 2005, plaintiff saw Linda Ingison, Ph.D., for a mental status examination that was arranged by the state agency.  Plaintiff reported to Dr. Ingison that he was very depressed and did not feel like doing anything.  He reported that he had been depressed for five years but that his depression had become worse in the last two years.

Plaintiff told Dr. Ingison that he had trouble sleeping, his appetite was poor and he had difficulty concentrating.  AR 215-16.

Dr. Ingison diagnosed plaintiff with major depressive episode, recurrent, history of alcohol abuse in sustained full remission and anxiety disorder.  Her mental status examination of plaintiff indicated that he was alert and oriented with spontaneous and orderly thought processes.  Dr. Ingison noted that plaintiff had a good memory for recent and remote events.  Plaintiff attempted serial sevens and made one correct guess and one incorrect guess before stating he could not do it because he could not concentrate and keep the numbers in his mind.  Dr. Ingison noted that plaintiff had a good basic abstractional capacity but had trouble with higher order abstractions.  She reported that plaintiff described himself as being able to get along okay with others and as having no problems with people in the work place.  She concluded that

> The claimant could understand, remember, and carry out instructions typical in this evaluation today.  He was able to respond appropriately to this evaluator and gives no history of problems with supervisors or others.  However, he frankly admits that he is withdrawn from others.  Concentration and attention appeared generally adequate and he would likely have trouble with stress, pace and change demands.  No evidence is given today that he is incapable of handling finances in his own best interest, and on this basis no payee is recommended for him.

AR 216-219.

7

On February 4, 2005, state agency consulting psychologist Jack Spear completed a Psychiatric Review Form for plaintiff after reviewing the evidence of record. He evaluated the evidence under the listing categories for affective disorder, anxiety related disorder and substance addiction disorder. In addressing the "B" criteria for these listings, he found that plaintiff had moderate restrictions of activities of daily living, moderate difficulties in maintaining social functioning and moderate difficulties in maintaining concentration, persistence or pace, with no episodes of decompensation. Spear concluded that the evidence did not establish the presence of the "C" criteria. AR 393-404.

Dr. Spear also completed a mental residual functional capacity assessment for plaintiff. He found on the "summary conclusions" portion of the form that plaintiff was moderately limited in his ability to

- understand, remember and carry out detailed instructions;

- maintain attention and concentration for extended periods;

- perform activities within a schedule, maintain regular attendance and be punctual within customary tolerances;

- complete a normal workday and work week without interruptions from psychologically based symptoms and perform at a consistent pace without an unreasonable number and length of rest periods;

- interact appropriately with the general public;

- accept instructions and respond appropriately to criticism from supervisors;

- respond appropriately to changes in the work setting; and

8

- set realistic goals or make plans independently of others.  AR 407-409.

On February 9, 2005, Dr. Spear signed a disability determination and transmittal form finding that plaintiff was not disabled.  AR 38.  Dr. Spear's assessment was affirmed by William Merrick, Ph.D., a state agency consulting psychologist, on August 3, 2005. AR409.  On the portion of the mental RFC assessment form that asked the consulting psychologists to describe plaintiff's mental residual functional capacity in narrative form, it says "see EWS," referring presumably to the electronic case development worksheet used by the disability adjudication team.  AR 409.  On that sheet, Dr. Merrick expressed his opinion that most of plaintiff's difficulties stemmed from physical rather than mental impairments, and that "if [plaintiff] were to be placed in a routine, unskilled job that did not require physical labor . . . he could do well and perform essential functions of the job."  AR 440-41.

On August 3, 2005, Dr. M. J. Baumblatt, a state agency consulting physician, completed a physical residual functional capacity assessment for plaintiff, noting that plaintiff had been diagnosed with kidney cyst removal and chronic pain syndrome.  He concluded that plaintiff could occasionally lift 20 pounds, frequently lift 10 pounds, stand and walk six hours in an eight-hour day, sit six hours in an eight-hour day and perform unlimited pushing and pulling.  AR 411-18.

D. <u>Hearing Testimony</u>

At the hearing, plaintiff told the administrative law judge that he wanted to represent himself.  AR 495.  He testified that he had an eleventh grade education and did not have a driver's license.  AR 499.  He said that he had quit his job as a construction laborer in May 2004 because of his kidney disease and chronic abdominal pain.  AR 502.  Plaintiff testified that he cannot work because the medications he takes (100 milligrams of morphine four times a day and 5 milligrams of oxycodone every three hours or as needed for pain (18 a day)) make him tired and forgetful.  AR 505.

Plaintiff testified that he was depressed, AR 506-507, but that his depression was controlled by the medication prescribed for him by Dr. Day.  AR 508.  Plaintiff said he had Barrett's disease, which is similar to acid indigestion.  AR 509.

Plaintiff testified that he could lift ten pounds, stand for one hour, walk one block and sit for two and a half hours.  AR 509-10.  He described his daily activities as sitting in his recliner and watching television and occasionally washing dishes and cooking.  AR 512.

The administrative law judge called plaintiff's wife as a witness.  She testified that she is disabled by chronic depression, post-traumatic stress and panic attacks.  AR 515.  She testified that because her husband has chronic pain in his kidney and is depressed, there is not much that he can do.  She described his hygiene as poor.  AR 516-17, 520.

William Dingess testified as a neutral vocational expert.  AR 522.  The administrative law judge asked him what jobs in the national economy could be performed by an individual

of plaintiff's age, education and work history who was limited to light work, occasional climbing, stooping, bending, crouching, crawling, kneeling or twisting, standing for no more than 60 minutes at one time, sitting for no more than 60 minutes at a time, no extensive walking and who had a "limited but satisfactory" ability to deal with the public, interact with supervisors, deal with work stresses, maintain attention and concentration, understand, remember and carry out detailed instructions, demonstrate reliability and respond to changes in the work setting.   Dingess testified that such an individual could perform jobs as surveillance monitor (400 jobs), office helper (1,000 jobs), information clerk (2,000 jobs), industrial inspector (500 jobs), hand packer (1,000 jobs) and machine operator (500 jobs). The administrative law judge asked Dingess whether there were any jobs that such an individual could perform if he was limited to sedentary work.  AR 525.   Dingess testified that such an individual could perform a reduced number of jobs as surveillance monitor (300 jobs), office helper (750 jobs), information clerk (1,500 jobs), industrial inspector (300 jobs), hand packer (400 jobs) and machine operator (300 jobs). The administrative law judge asked Dingess whether his testimony differed from the information in <u>The Dictionary of Occupational Titles</u> in any way.  He replied that it did not. AR 527.

### E. <u>The Administrative Law Judge's Decision</u>

In reaching his conclusion that plaintiff was not disabled, the administrative law judge performed the required five-step sequential analysis.  20 C.F.R. § 404.1520.  At step one, he

11

found that plaintiff had not engaged in substantial gainful activity since May 1, 2004, the alleged onset date of plaintiff's disability. AR 30. At step two, the administrative law judge found that plaintiff had severe impairments of polycystic kidney disease and mild depression. The administrative law judge found at step three that plaintiff did not have an impairment or combination of impairments that met or medically equaled any impairment listed in 20 C.F.R. § 404, Subpart P, Appendix 1. AR 30.

At step four, the administrative law judge determined that plaintiff retained the residual functional capacity to perform work requiring lifting 20 pounds occasionally; standing for no more than 60 minutes at one time; sitting for no more than 60 minutes at a time, no extensive walking and occasional climbing, stooping, bending, crouching, crawling, kneeling or twisting. The administrative law judge also found that plaintiff had limited but satisfactory ability to deal with the public; interact with supervisors; deal with work stresses; maintain attention and concentration; understand, remember and carry out detailed instructions; demonstrate reliability; and respond to changes in the work setting. AR 28.

In making his findings, the administrative law judge considered Dr. Ingison's report and her conclusion that plaintiff had depression. The administrative law judge found that Ingison's diagnosis was based largely on plaintiff's subjective complaints and not on any significant findings on mental status examination. The administrative law judge stated that

12

> The fact that there has been no ongoing psychiatric/psychological treatment, especially when that claimant has shown no hesitancy to seek treatment for other complaints, suggests that even he does not believe his psychological impairment is all that severe, otherwise he would have at least sought an evaluation. The claimant certainly has the mental capacity for unskilled work.

AR 30.

The administrative law judge also considered Dr. Day's treatment notes and his various letters discussing his opinion that plaintiff is disabled. The administrative law judge observed that these letters were not accompanied by progress notes or objective testing and that Day had offered little if any discussion to support his opinion that plaintiff could not work. AR 26. The administrative law judge explained that he gave Day's opinion limited weight "because of questions as to his objectivity, but also because of some inconsistencies in that doctor's own treatment records." AR 29. He questioned Day's objectivity because the doctor had changed his opinion about plaintiff's ability to work after plaintiff's repeated requests and also continued to prescribe plaintiff narcotics despite his inability to determine the source of plaintiff's pain. AR 29.

The administrative law judge also found that plaintiff and his wife were not "all that credible" concerning plaintiff's pain. AR 29. He observed that serious questions had been raised aboutthe etiology of plaintiff's abdominal pain, noting that Dr. Day and the doctors

13

at the Mayo Nephrology Clinic had not found a connection between plaintiff's abdominal pain and the cysts on his kidneys.  The administrative law judge found that it was "by no means clear" that the strong narcotic pain medication plaintiff was taking was necessary and that Dr. Day was "presumably dispensing it to keep the claimant from complaining even more."  AR 29.  The administrative law judge noted that questions of excessive narcotic use and withdrawal had been raised by emergency room staff and no objective evidence supported the level of pain alleged by plaintiff or his wife's reports that he experienced disorientation, confusion, personality changes and difficulty walking.

At step five, the administrative law judge found that plaintiff was not able to perform his past work as a construction laborer but could perform jobs that existed in the local economy, namely surveillance monitor, office helper, information clerk, inspector, hand packer, machine operator, assembler and general office clerk.  In reaching this conclusion, the judge relied on the testimony of the vocational expert.  AR 31.

OPINION

A. Standard of Review

The standard by which a federal court reviews a final decision by the commissioner is well settled:  the commissioner's findings of fact are "conclusive" so long as they are supported by "substantial evidence."  42 U.S.C. § 405(g).  Substantial evidence means "such

14

relevant evidence as a reasonable mind might accept as adequate to support a conclusion."
Richardson v. Perales, 402 U.S. 389, 401 (1971).  When reviewing the commissioner's
findings under § 405(g), the court cannot reconsider facts, reweigh the evidence, decide
questions of credibility or otherwise substitute its own judgment for that of the
administrative law judge regarding what the outcome should be.  Clifford v. Apfel, 227 F.3d
863, 869 (7th Cir. 2000).  Thus, where conflicting evidence allows reasonable minds to reach
different conclusions about a claimant's disability, the responsibility for the decision falls on
the commissioner.  Edwards v. Sullivan, 985 F.2d 334, 336 (7th Cir. 1993).  Nevertheless,
the court must conduct a "critical review of the evidence" before affirming the
commissioner's decision, id., and the decision cannot stand if it lacks evidentiary support or
"is so poorly articulated as to prevent meaningful review."  Steele v. Barnhart, 290 F.3d 936,
940 (7th Cir. 2002).  When the administrative law judge denies benefits, he must build a
logical and accurate bridge from the evidence to his conclusion.  Zurawski v. Halter, 245
F.3d 881, 887 (7th Cir. 2001).


B. Mental Impairments

        Plaintiff argues that the administrative law judge failed to properly evaluate his
mental impairments of depression and anxiety.  First, he argues that the administrative law
judge failed to assess his mental impairments in accordance with the special technique

15

outlined in 20 C. F. R. § 404.1520a.  That regulation prescribes a special process for administrative law judges to follow when the claimant alleges a mental impairment.  First, the administrative law judge must determine whether the claimant has a medically determinable mental impairment.  20 C.F.R. § 416.920a(b)(1).  If a medically determinable mental impairment exists, the administrative law judge then must rate the degree of functional limitation resulting from the impairment in four broad categories:  activities of daily living; social functioning; concentration, persistence or pace; and episodes of decompensation.  20 C.F.R. § 416.920a (c).  Assessing the degree of functional loss in each category is important in determining whether the claimant has a "severe" mental impairment, and if so, whether the impairment meets the criteria of a listed impairment.  Claimants who are found to have "none" or "mild" functional loss are generally found not to have a severe mental impairment.  20 C.F.R. § 416.920a(d)(1).  In general, those who have "marked" functional loss in two or more categories will meet the criteria for a listed impairment.  <u>See generally</u> 20 C.F.R., Pt. 404, Subpt. P, App. 1, 12.00 (the listings for mental disorders.)  An administrative law judge need not complete a Psychiatric Review Technique Form showing his findings, but may document the findings in the decision.  20 C.F.R. § 416.920a(e).

In this case, the administrative law judge's decision contains no findings showing that he evaluated plaintiff's degree of functional loss in the four relevant categories as required

by the regulation.  However, plaintiff has not adduced any evidence to show how this omission affected the outcome of his application.  Although the administrative law judge was skeptical of Dr. Ingison's diagnosis of major depression, nonetheless, he found plaintiff's impairment to be severe and went on to include various mental limitations in his residual functional capacity assessment.

As for step three of the sequential evaluation, plaintiff points to no evidence suggesting that he satisfies the criteria of any listed mental impairment.  The only evidence on the question whether plaintiff met or equaled a listed mental impairment were the opinions of the state agency physicians, who concluded that he did not.  Because there was no evidence contrary to the state agency opinions, the administrative law judge was not required to explain his analysis of the listings in any detail.  Scheck v. Barnhart, 357 F.3d 697, 700-01 (7th Cir. 2004); Maggard v. Apfel, 167 F. 3d 376, 379 (7th Cir. 1999) (plaintiff has burden of showing that his impairments meet listing).  In sum, any failure by the administrative law judge to state explicitly how he had evaluated plaintiff's degree of functional loss in the four relevant categories is at most harmless error.  Keyes v. Barnhart, 347 F.3d 990, 994 (7th Cir. 2003) (harmless error doctrine applies to administrative decisions).

Next, plaintiff contends that remand is required because the administrative law judge did not make it clear in his decision whether or how he accounted for the various "moderate"

17

mental limitations found by the state agency psychologists on the "summary conclusions" portion of the Mental Residual Functional Capacity assessment form.  As plaintiff concedes, nothing in the commissioner's regulations or rulings requires administrative law judges to make findings concerning each of the limitations listed on the "Summary Conclusions" or to use the same terminology to express the degree to which the plaintiff is limited.  Lembke v. Barnhart, 2006 U.S. Dist. LEXIS 95154, *24-27 (W.D. Wis. Dec. 29, 2006).  With respect to mental residual functional capacity, the commissioner's regulations and rulings provide only that a person must be able to perform the following mental activities in order to perform competitive, unskilled work:  understand, remember and carry out simple instructions; make judgments that are commensurate with the functions of unskilled work; respond appropriately to supervision, co-workers and usual work situations; and deal with changes in a routine work setting.  20 C.F.R. § 404.1545(a)(2); Soc. Sec. Ruling 96-9p.

The administrative law judge addressed each of these activities in his residual functional capacity assessment.  In fact, contrary to plaintiff's contention, the administrative law judge's residual functional capacity assessment *does* track the summary conclusions of the state agency physicians.  Although plaintiff asserts that the administrative law judge omitted the conclusion of the state agency psychologists that plaintiff had a moderate limitation on his ability to "perform activities within a schedule, maintain regular attendance and be punctual within customary tolerances," the administrative law judge found that plaintiff had

a limited but satisfactory ability to "demonstrate reliability."   This limitation is consistent with the limitation on maintaining attendance and punctuality that the state agency psychologists found.   Plaintiff also points out that the administrative law judge's residual functional capacity assessment included no limitation on plaintiff's ability to "set realistic goals or make plans independently of others."   However, plaintiff makes no convincing argument why this activity is essential to the performance of unskilled work.   In fact, the commissioner's internal rules indicate that the ability to set realistic goals or make plans independently activity is a mental ability needed to do semiskilled and skilled work, *not* unskilled work.   Program Operations Manual System (POMS) DI 25020.010B.4.   Plaintiff does not suggest that any of the jobs identified by the vocational expert were skilled or semiskilled.   Accordingly, the administrative law judge did not err in not referring to the state agency psychologists' finding that plaintiff had a moderate limitation in the ability to set realistic goals or make plans independently.

Plaintiff objects to the administrative law judge's use of the term "limited but satisfactory" to describe plaintiff's various limitations that the state agency psychologists had described as "moderate," arguing that the administrative law judge's terminology implied that plaintiff had no limitations at all.   Although plaintiff's argument has some surface appeal, it does not stand up to close examination.   Unlike physical limitations, mental limitations are difficult to measure.   "Moderate" is not defined in the regulations or on the

19

forms completed by the state agency psychologists.   However, the regulations define "marked" as "more than moderate but less than extreme."   20 C.F.R., Pt. 404, Subpt. P, App. 1, §12.00(c).   Thus, "moderate" means something significantly less than extreme.   "Limited but satisfactory" is a reasonable interpretation of the term "moderate."   I am satisfied that the vocational expert properly understood from the administrative law judge's hypothetical that plaintiff had some limitations in his ability to perform certain mental activities, but they were not so severe as to preclude all performance of the activity.   This comports with the conclusion of the state agency psychologists, who concluded that plaintiff remained capable of routine, unskilled work in spite of his moderate mental limitations.

Contrary to plaintiff's contention, Dr. Ingison's report does not contradict the administrative law judge's findings.   Dr. Ingison found that plaintiff got along with others in the workplace.   She also found that plaintiff's concentration and attention were generally adequate and that he could understand, remember and carry out instructions.   Although she indicated that plaintiff "would likely have trouble" with stress, pace and change demands, she did not say that plaintiff was incapable of working.   Moreover, the administrative law judge was entitled to discount any suggestion that plaintiff had a disabling mental impairment in light of plaintiff's failure to seek treatment for his alleged depression and the fact that Dr. Ingison based her assessment of plaintiff's limitations largely on plaintiff's subjective complaints.   Rice v. Barnhart, 384 F.3d 363, 371 (7th Cir. 2004) ("[M]edical

20

opinions upon which an ALJ should rely need to be based on objective observations and not amount merely to a recitation of a claimant's subjective complaints").  Plaintiff's arguments to the contrary are not persuasive. Overall, substantial evidence in the record supports the administrative law judge's assessment of plaintiff's mental residual functional capacity.

## C.  Physical Impairment

Plaintiff contends that the administrative law judge erroneously rejected Dr. Day's opinion that plaintiff is unable to work because of chronic pain.  Although an administrative law judge must consider all medical opinions of record, he is not bound by those opinions. Haynes v. Barnhart, 416 F.3d 621, 630 (7th Cir. 2005).  "[T]he weight properly to be given to testimony or other evidence of a treating physician depends on circumstances." Hofslien v. Barnhart, 439 F.3d 375, 377 (7th Cir. 2006).  When a treating physician's opinion is well supported and no evidence exists to contradict it, the administrative law judge has no basis on which to refuse to accept the opinion.  Id.; 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). When, however, the record contains well-supported contradictory evidence, the treating physician's opinion "is just one more piece of evidence for the administrative law judge to weigh," taking into consideration the various factors listed in the regulation.  Id.  These factors include how often the treating physician has examined the claimant, whether the physician is a specialist in the condition claimed to be disabling, how consistent the

21

physician's opinion is with the evidence as a whole, and other factors.  20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).  An administrative law judge must provide "good reasons" for the weight he gives a treating source opinion.  Id.  He also must base his decision on substantial evidence and not mere speculation.  White v. Apfel, 167 F.3d 369, 375 (7th Cir. 1999).

The administrative law judge considered Dr. Day's treatment notes and opinions.  He explained that he gave limited weight to Day's opinion that plaintiff could not work because he questioned the doctor's objectivity and certain inconsistencies in his treatment notes.  He also stated that Day provided little if any support for his opinion and had not submitted any accompanying documentation in the form of progress notes or objective testing.  These findings are supported by the record and are adequate reasons for not giving Day's opinion controlling weight.

Further, the administrative law judge discussed the fact that Dr. Day changed his mind between March 21, 2005 and July 12, 2005.  In the March 21, 2005 letter, Day stated that he was not sure that he could say that plaintiff was unable to work.  In the July 21, 2005 letter, however, he stated that plaintiff was unable to work full time and that it was likely to be a permanent restriction.  An administrative law judge may reject the changed position of a treating physician if the physician fails to provide support for his changed opinion.  Griffith v. Callahan, 138 F.3d 1150, 1155 (7th Cir. 1998) (treating physician's

22

opinion rejected because later opinion contradicted earlier opinion and was not supported by "objective findings of deterioration.") The administrative law judge explained that he was rejecting Day's changed opinion because it was not supported by accompanying documentation or objective testing. His conclusion is supported by the evidence in the record. The only treatment notes concerning plaintiff's abdominal pain after March are on April 20, 2005 and May 20, 2005 and they indicate that plaintiff had no palpable tenderness or any masses in his left upper quadrant on either day. No objective findings support any change in plaintiff's condition after March 21, 2005, when Day said he was unable to say whether plaintiff was unable to work. Because the administrative law judge explained his reasons for rejecting Dr. Day's opinion and relied on substantial evidence in the record, I find no fault in his determination.


ORDER

IT IS ORDERED that the decision of defendant Michael J. Astrue, Commissioner of Social Security, is AFFIRMED and plaintiff Peter L. Dunn's appeal is DISMISSED. The

clerk of court is directed to enter judgment in favor of defendant and close this case.

Entered this 2d day of July, 2008.

BY THE COURT:

_____
BARBARA B. CRABB
District Judge

24